Minute Order Form (06/97)

JS - 6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2643 | **DATE** | 6/30/2004 |
| **CASE TITLE** | Willette Benford vs. Lynn Cahill-Masching | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: We deny Willette Benford's petition for a writ of habeas corpus. The status hearing set for 7/8/04 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 0 2 2004 | |
| | Notified counsel by telephone. | | date docketed | 20 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 6/30/2004 | |
| GL | courtroom deputy's initials | 2004 JUL -1 AM 8:52 Date/time received in central Clerk's Office | date mailed notice GL mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WILLETTE BENFORD, | ) |
| Petitioner, | ) |
| v. | ) No. 03 CV 2643 |
| LYNN CAHILL-MASCHING, | ) |
| Respondent. | ) |

DOCKETED JUL 0 2 2004

## MEMORANDUM OPINION & ORDER

MARVIN E. ASPEN, District Judge:

Petitioner Willette Benford is currently incarcerated at the Dwight Correctional Center in Dwight, Illinois, where she is in custody of Respondent Warden Alyssa B. Williams.[1] Currently before us is Benford's petition for writ of habeas corpus. For the following reasons, we deny Benford's petition.

## BACKGROUND[2]

On October 11, 1995, after a jury trial, the Circuit Court of Cook County, Illinois entered a conviction against Willette Benford for first-degree murder and sentenced her to fifty years imprisonment. She appealed to the Illinois Appellate Court, which affirmed her conviction on March 23, 1998. Benford then petitioned the Illinois Supreme Court for leave to appeal. She argued the appellate court erred when it failed to consider her claim that twelve victim impact statements were

---

[1]Since the filing of this action, Alyssa B. Williams has replaced Lynn Cahill-Masching as the Warden of the Dwight Correctional Center. Williams is the proper respondent in this habeas action.

[2]The facts contained herein are taken from the parties' filings.



improperly admitted in the sentencing phase of her trial.[3] The Illinois Supreme Court denied her petition for leave to appeal on October 6, 1998.

Benford then filed a *pro se* petition for post-conviction relief. The trial court summarily dismissed the petition. Benford appealed the dismissal to the Illinois Appellate Court, which affirmed. She then filed a petition for leave to appeal to the Illinois Supreme Court, raising three arguments. First, she argued that the appellate court applied the wrong standard of review when it affirmed the dismissal of her ineffective assistance of counsel claims. Second, Benford claimed her sentence was unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). And third, she asserted the statute that allowed the trial court to summarily dismiss her post-conviction petition violated the Single Subject Rule of the Illinois Constitution. The Illinois Supreme Court denied Benford leave to appeal.

Benford filed the present habeas petition in which she raises seven arguments. First, Benford alleges denial of effective assistance of counsel because her trial attorney failed to present evidence concerning her relationship with the victim. Second, Benford claims that she was denied her right to appeal when the Illinois Appellate Court subjected her *pro se* post-conviction petition to a higher standard than is required to survive summary dismissal. Third, Benford argues that she was unfairly denied her right to appeal because the Post-Conviction Hearing Act, which allows for the dismissal of post-conviction petitions prior to the appointment of counsel, violates the Single Subject Rule of the Illinois Constitution. Fourth, Benford claims the trial court violated her due process rights when it relied on an unconstitutional statute to find her eligible for an extended sentence. Benford's fifth claim is that she was denied her due process right to a fair trial when the jury was allowed to view an inflammatory autopsy photograph of the victim's nude body. Sixth, Benford argues that she is entitled to a new

---

[3]Petitioner included other claims in her various appeals and post-conviction petitions. Only those germane to the petition before this Court are detailed here.

sentencing hearing because the trial court improperly considered twelve victim impact statements in violation of state law. Finally, Benford claims that the trial court violated her right to due process by summarily dismissing her post-conviction petition upon a finding that her ineffective assistance of counsel claim was barred by *res judicata*.

## DISCUSSION

### I. STANDARD OF REVIEW

Petitions for habeas corpus relief may be filed in a district court under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), on the grounds that a person in state custody was convicted in violation of the Constitution, laws, or treaties of the United States. Federal habeas relief is granted to a petitioner who can establish that the state court's adjudication of her claim was "contrary to or involved an unreasonable application of clearly established federal law." 28 U.S.C. § 2254(d)(1). Relief may also be granted where the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).

### II. PROCEDURAL DEFAULT

Before a court can review the merits of a habeas petition, the petitioner must have exhausted all available state remedies. If a habeas petitioner wishes to raise a federal claim, details regarding the substance of the federal claim must have been presented to the state courts before bringing the issue to federal court. *Duncan v. Henry*, 513 U.S. 364, 367 (1995); *Picard v. Connor*, 404 U.S. 270, 278 (1971). A state prisoner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). We find that Benford did not exhaust all state remedies with regard to claims five and seven because she failed to present those claims to the Illinois Supreme Court in either

her direct appeal or post-conviction petition. These claims are dismissed as a result of procedural default.[4]

### III. HABEAS CLAIMS

#### A. Ineffective Assistance of Counsel: Claim One

Benford asserts that she was denied effective assistance of counsel because her trial lawyer failed to introduce witnesses to testify about her long-term relationship with the victim. In essence, she argues that if the jury had known about the positive aspects of their relationship, it would have been more inclined to find Benford guilty of reckless homicide rather than first degree murder. Benford alleges that her defense counsel refused to present these witnesses because he was uncomfortable with the fact that Benford was a lesbian and was involved in a homosexual relationship with the victim. We find that this claim lacks merit.

To obtain relief based on an ineffective assistance of counsel claim, a petitioner must show that: 1) counsel's performance fell below an objective standard of reasonableness; and 2) that the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To demonstrate prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. An attorney's decision whether or not to place a witness on the stand during a trial is generally considered a tactical decision and is thus entitled to great deference. *Id.* If we accept Benford's allegation that her attorney's decision not to present testimony about her relationship with the victim was motivated by improper animus toward her sexual preference, her counsel's performance would indeed fall below an objective standard of reasonableness.

---

[4]However, as we will discuss below, there are also substantive reasons why these claims should be dismissed.

4

However, Benford's claim still lacks merit because it does not fulfill the second part of the *Strickland* test, that the attorney's conduct created a reasonable probability that the outcome of the trial would have been different. The Illinois Appellate Court considered the same question in Benford's petition for post-conviction relief and concluded that none of the witness testimony Benford advocated presenting could establish her mental state on the night of the offense. Although the proposed witnesses could have provided general testimony about Benford's relationship with the victim, "none of the affiants was present when the offense was committed or saw or spoke with the defendant immediately before or after the commission of the offense. Thus, their testimony would not have directly related to defendant's state of mind at the time she hit the victim with her car." *People v. Benford*, No. 1-99-0845 (Ill.App.Ct. Feb 2, 2001). The court further concluded that, although the testimony might shed some light on Benford's relationship with the victim, it would not be sufficient to create a different outcome given the "overwhelming evidence" that Benford hit the victim intentionally.[5] Although we are not required to adopt the rationale of the Illinois Appellate Court, principles of comity require us to give deference to a state court's decision. *Strickland*, 466 U.S. at 698. We thus accept the state court's rationale and find that Benford does not state a claim for ineffective assistance of counsel.

### B. Denial of Right to Appeal

#### 1. Claim Two

Benford alleges that she was denied her right to appeal because the Illinois Appellate Court erroneously subjected her post-conviction petition to a higher standard than is required to survive summary dismissal at the initial stage of post-conviction proceedings. Benford made a similar assertion based on state law when she appealed the dismissal of her post-conviction petition to the Illinois

---

[5] There is no need to go into this evidence in great detail. It is uncontested that Benford hit the victim with her car at least two times. The only issue at trial was Benford's mental state at the time.

Supreme Court. *See People v. Benford*, No. 90947 (Ill. Feb. 21, 2001). Specifically, she alleged that the dismissal of her post-conviction petition violated the Illinois Post-Conviction Hearing Act. 725 Ill. Comp. Stat. 5/122-4 through 122-6 (1998). Even though Benford recast this claim in terms of a constitutional violation for the purposes of her habeas petition, she avoided a procedural default because the substance of the claim was presented to the state supreme court, as is required by *Duncan v. Henry*, 513 U.S. 364, 367 (1995). The State, however, challenges this claim as non-cognizable because it involves a question of state law and therefore is not open for consideration in a federal habeas proceeding. We agree with this assessment.

Although presented as denial of right to appeal, the claim actually challenges the manner in which an Illinois court applied a state law, in this case the Illinois Post-Conviction Hearing Act. Habeas relief can only be granted for violations of federal law. Claims that a state court erred in applying its own law are not cognizable on habeas review. *Jones v. Theiret*, 846 F.2d 457, 459 (7th Cir. 1988). To raise a cognizable claim, a petitioner must allege an independent constitutional violation. *See Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996). Likewise, alleged errors in state collateral proceedings cannot form the basis for habeas relief unless those proceedings violate an independent constitutional right. *See id.*

However, there is no independent constitutional right to an appeal. *Abney v. U.S.*, 431 US 651, 656 (1977). The states are not constitutionally required to provide appellate review to any defendant. *Griffin v. Illinois*, 351 U.S. 12, 18 (1956). But once a state has established an appellate process, it cannot deny access to the process in a discriminatory manner. *Id.* To successfully assert that the appellate court denied her right to appeal in this case, Benford would have to establish that the court acted in a way that denied either her right to due process or equal protection under the law. *Id.* A petitioner can only raise such a claim if she can prove that the court treated her differently than other similarly situated

defendants. *See M.L.B. v. S.L.J.*, 519 U.S. 102, 102-03 (1996)(ruling that petitioner could not be denied opportunity to appeal simply because she was unable to pay for reproduction of documents required by the appellate court). Such treatment would be discriminatory and, if proven, amount to a denial of equal protection sufficient to constitute a habeas claim.

Benford does not allege that the appellate court treated her differently than any other petitioner. She simply asserts that she did not like the way in which the Illinois Appellate Court applied the summary dismissal standard established by state law to her petition for post-conviction relief. The applicable statute provides that if the court "determines that the petition is frivolous or is patently without merit, it shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision." 725 Ill. Comp. Stat. 5/122-2.1(a)(2). The Illinois Appellate Court applied this standard and dismissed the claim only after a thorough review of Benford's assertions. There is nothing in the appellate court's decision, or in Benford's allegations, which would suggest that her due process or equal protection rights were violated. For these reasons, we find this claim to be non-cognizable.

### 2. Claim Three

In her third claim, Benford asserts that she was denied her right to appeal because the Illinois law which allowed her petition to be summarily dismissed violates the Illinois state constitution, specifically its Single Subject Rule. In response, the state asserts that this claim is non-cognizable. We agree with this assessment and dismiss the claim accordingly.

It is not within the purview of a federal habeas proceeding to question whether an Illinois statute violates the Illinois Constitution. The Illinois statute Benford challenges as unconstitutional, 725 ILCS 5/122-2.1(a)(2), has been evaluated and upheld by a number of Illinois Appellate Courts. *See, e.g., People v. Douglas*, 768 N.E.2d 766 (Ill. App. Ct. 2002); *People v. Lee*, 762 N.E.2d 18 (2001) (reversed

on other grounds); *People v. Vilces*, 748 N.E.2d 1219 (Ill. App. Ct. 2001); *People v. Sharpe*, 749 N.E.2d 432 (Ill. App. Ct. 2001). All of these courts agree that the contested statute does not violate the Single Subject Rule. The state courts have upheld the constitutionality of the statute and Benford fails to assert any independent violation of her federal or constitutional rights. As with claim two, Benford does not assert that she was treated differently than any other similarly situated defendant. Therefore, she has no claim for a denial of right to appeal under the federal Constitution. As a result, we find this claim to be non-cognizable in a federal habeas proceeding.

### C. Denial of Due Process

#### 1. Claim Four

In her fourth claim, Benford alleges that she was denied her right to due process because the trial court relied on an unconstitutional Illinois law to determine her sentence. Benford asserts that the statute violates the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. At her sentencing hearing, the trial court expressly found Benford eligible for an extended term under 730 Ill. Comp. Stat. 5/5-5-3.2 (b)(2). This statute does not require that the factors allowing for an extended term be submitted to a jury and proven beyond a reasonable doubt. Indeed, at least one Illinois Appellate Court has found that section 5/5-5-3.2 (b)(2) violates *Apprendi* and vacated all extended sentences handed out pursuant to that statute. *See People v. Daniels*, 346 Ill. App. 3d 351 (Ill. App. Ct. 2004).

Although the trial judge found Benford eligible for an extended term of 100 years under this statute, the judge expressly declined to give Benford an extended term. Instead, he sentenced her to fifty years imprisonment, a sentence below the maximum term of sixty years provided by law. Benford

claims that, although the judge did not actually give her a sentence outside of the statutory maximum, the sentence still violated *Apprendi* because the option of the extended term influenced the judge's decision to assign a sentence near the upper end of the statutory range. We disagree. The Supreme Court itself noted in *Apprendi* that nothing in that decision prevented judges from using their discretion to sentence defendants within statutory limits. *Apprendi*, 530 U.S. at 481. Furthermore, the Seventh Circuit has ruled that *Apprendi* only applies when the actual sentence imposed exceeds the statutory maximum. *United States v. Johnson*, 335 F.3d 589, 591 (7th Cir. 2003). We therefore decline to reverse the trial court's sentencing decision and dismiss claim four.

### 2. Claim Five

In her fifth claim, Benford argues that she was denied her due process right to a fair trial because the jury was allowed to view a highly inflammatory autopsy photograph of the victim's nude body, which depicted a laceration in the pubic area that was not explained by the medical examiner's testimony. Benford did not raise this claim before the Illinois Supreme Court in her direct appeal nor in her petition for post-conviction relief, and therefore failed to exhaust her state remedies. *O'Sullivan*, 526 U.S. at 845. In its answer, the state pled that Benford had procedurally defaulted on this claim. We agree with this conclusion.

This Court could still consider the merits of Benford's procedurally defaulted claim on two possible grounds. First, review is possible if she has shown cause for the default and that actual prejudice resulted. *See Wainwright v. Sykes*, 433 U.S. 72, 85 (1977); *see also Farrell v. Lane*, 939 F.2d 409, 411 (7th Cir. 1991). Second, review is possible if a lack thereof would result in a "fundamental miscarriage of justice." *See Schlup v. Delo*, 513 U.S. 298, 314-15 (1995). To show cause under the first exception, Benford must prove that an objective factor external to the defense obstructed her efforts to present all federal claims in state court. *See Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). Benford

9

asserts no external factor which prevented her from bringing this claim before the Illinois Supreme Court in either her direct appeal or petition for post-conviction relief. Indeed, Benford included a similar claim in her direct appeal to the Illinois Appellate Court, but neglected to include it in her petition for leave to appeal to the Illinois Supreme Court.

Nor is Benford's claim saved by the "miscarriage of justice" exception. To establish that such an error has occurred, the petitioner must demonstrate that a constitutional violation resulted in the conviction of one who is actually innocent. To accomplish this, the petitioner must present clear and convincing evidence that, but for the alleged error, no reasonable juror would have convicted her. *See Dellinger v. Bowen*, 31 F.3d 758, 767 (7th Cir. 2002). Benford cannot meet this burden. Her guilt is not in question. Numerous witnesses saw Benford run over the decedent with her car. There is no indication that seeing the autopsy photo affected the decision of any of the jurors. Although Benford may believe that the photograph was unduly prejudicial, she cannot credibly conclude that had it not been introduced into evidence, she would have been found innocent. Absent such a miscarriage of justice, we cannot excuse Benford's failure to present this claim to the Illinois Supreme Court. This claim is procedurally defaulted and we are barred from ruling on its merits.

### 3. Claim Six

In Benford's sixth claim, she asserts the state violated her due process rights by introducing twelve victim impact statements during the sentencing phase of her trial in violation of Illinois law. Benford requests a new sentencing hearing to remedy this violation. We find that this claim does not have merit.

Benford filed a similar claim, based solely on the violation of state law, in her first petition for leave to appeal to the Illinois Supreme Court. Like claims two and three, the state classified this claim as non-cognizable because it involves a question of state law and therefore is not open for consideration

in a federal habeas proceeding. In this instance, we disagree with the state's assertion. The sixth claim in Benford's habeas petition is labeled as deprivation of due process, even though it originated from a violation of an Illinois statute. A habeas petition which includes a claim previously reviewed solely in the context of state law can be ruled on by a federal court if the claim is written "in terms so particular as to call to mind a specific constitutional right." *Kurzawa v. Jordan*, 146 F.3d 435, 441 (7th Cir. 1998). More to the point, the United States Supreme Court has suggested that the introduction of victim impact statements during the sentencing phase of a trial can constitute a violation of a defendant's due process rights, independent of state law. *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)(O'Connor, J., concurring). We find the claim to be cognizable under 28 U.S.C § 2254. Thus, we move on to the merits of the claim.

Benford asserts that the trial court did not comply with the Illinois Rights of Crime Victims and Witnesses Act, 725 Ill. Comp. Stat. 120/1-9 (1994), when it considered twelve victim impact statements during her sentencing. The Act allows the prosecution to submit a single victim impact statement during the sentencing phase of a criminal trial. 725 Ill. Comp. Stat. 120/6(a). In murder cases, only the victim's immediate family members (parent, children, or siblings) are allowed to present such statements to the court. 725 Ill. Comp. Stat. 120/5(a). Petitioner asserts that the prosecution violated Illinois law by presenting multiple statements, including statements from ten parties who were not immediate family members. On appeal, the Illinois Appellate Court agreed with this assertion, but ruled that it could not grant the petitioner relief due to a provision of the Act, which reads: "Nothing in this Act shall create a basis for vacating a conviction or a ground for appellate relief in any criminal case." 725 Ill. Comp. Stat. 120/9. Despite this provision, Benford now argues that the state's violation of Illinois law was egregious enough to constitute a denial of her federal due process rights.

As noted above, in *Payne v. Tennessee*, Justice O'Connor cautioned that the admission of victim impact statements could render a trial so fundamentally unfair as to deprive the defendant of his or her due process rights. 501 U.S. at 825. In *People v. Richardson*, the Illinois Supreme Court also suggested that while the improper admission of multiple victim impact statements was not grounds for appellate relief under Illinois state law, it could result in a fundamentally unfair trial and violate a defendant's due process rights. 715 N.E.2d 1104, 1106-07 (Ill. 2001). Neither the U.S. Supreme Court in *Payne*, nor the Illinois Supreme Court in *Richardson* found that a due process violation had actually occurred, but the door was left open for future challenges of this ilk.

Benford asserts that her due process rights were violated in two ways. First, the prosecution submitted multiple victim impact statements, the majority of which were not written by the victim's immediate family. Second, three of the statements allude to another, unsubstantiated murder allegedly committed by Benford. Benford asserts that the judge rendered the sentencing phase of her trial fundamentally unfair when he considered multiple statements of dubious origin and content. We will examine the two parts of this claim individually.

### *a) Multiple Victim Impact Statements and Statements by Non-Victims*

First we will examine Benford's claim that the admission of twelve statements, including statements by ten parties not classified as victims, violated her right to due process. The Seventh Circuit has never overturned a sentence based on the admission of multiple victim impact statements or the admission of statements from non-victims. Even *Richardson*, a case to which both the petitioner and respondent cite in their memoranda, does not provide a guiding example of when a violation of the pertinent Illinois law actually would constitute a due process violation. In *Richardson*, the Illinois Supreme Court found no evidence of fundamental unfairness despite the fact that the prosecution disregarded Illinois law by submitting multiple victim impact statements. 751 N.E.2d at 1109.

12

We are also constrained by our limited authority to review state court rulings on evidentiary issues. The admissibility of evidence in a state court proceeding is an issue of state law and it is not this Court's place to determine whether or not the trial court correctly applied state law. *Stomner v. Kolb*, 903 F.2d 1123, 1128 (7th Cir. 1990). Even if a violation of state evidentiary law did occur, the Seventh Circuit has ruled that such questions are rarely an adequate basis for habeas relief. *Howard v. O'Sullivan*, 185 F.3d 721, 724 (7th Cir. 1999). It is not the role of a district court in a habeas proceeding to correct state court errors, "[u]nless the claimed error amounted to a fundamental defect so great that it inherently resulted in a complete miscarriage of justice." *Searcy v. Greer*, 768 F.2d 906, 910 (7th Cir. 1985)(citing *Cramer v. Fahner*, 683 F.2d 1376, 1385 (7th Cir. 1982)).

In Benford's state court trial, the prosecution submitted the victim impact statements as aggravating evidence during the sentencing phase. The trial judge took a recess specifically to review these statements. Upon returning from the recess, the judge proclaimed the sentence. Explaining his decision, the judge noted that he had read and considered all twelve of the statements. But, in addition to the statements, he mentioned ten other factors which contributed to his deliberations. In his deliberations, the judge said he mainly considered the heinous nature of the crime, Benford's refusal to accept responsibility for the crime, and Benford's prior criminal record. Thus, we find that the trial judge most likely would have handed down the same sentence even if he had not considered the improper impact statements.

Considering the lack of precedent, the absence of guiding principles, and the circumstances of Benford's trial, we find that the admission of multiple victim impact statements and statements by non-victims did not constitute an error sufficient to create a "miscarriage of justice" and render Benford's trial fundamentally unfair.

### *b) Statements Referring to Another Murder*

A more complex issue is whether the admission of statements referring to a previous crime constituted a depravation of Benford's due process rights. In *People v. Hope*, the Illinois Supreme Court ruled that the admission of impact statements written by victims of an unrelated crime constituted a violation of fundamental fairness. 702 N.E.2d 1282, 1289 (Ill. 1998). However, the Seventh Circuit has ruled that the improper introduction of evidence of other crimes, regardless of source, will not support a petition for habeas corpus without proof that the trial was rendered fundamentally unfair by this evidence. *Searcy*, 768 F.2d at 910.

The murder alluded to in the three statements that Benford challenges does not appear in her criminal record and is not mentioned anywhere else in the trial record. Accordingly, we apply the standard used by the Seventh Circuit to determine whether the admission of false or unreliable evidence during the sentencing phase of a trial violates fundamental fairness. First, the petitioner must show that the evidence in question was false or unreliable. *Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003). Second, the petitioner must demonstrate that the judge gave "explicit attention" to and "found[ed]" the sentence "at least in part" on the inaccurate information. *Id.* (*quoting Tucker v. United States*, 404 U.S. at 443, 447 (1972)). Benford's claim fails to meet the second part of this standard.

In *U.S. ex rel. Welch*, the Seventh Circuit found a petitioner's due process rights had been violated because the trial judge based his sentencing decision on the incorrect belief that the petitioner had a prior conviction for armed robbery. 738 F.2d 863, 869 (7th Cir. 1984). The trial judge in *Welch* specifically mentioned this erroneous belief as a "significant factor" in his sentencing decision. *Id.* at 866. In contrast, the Seventh Circuit found no such indication of fundamental unfairness in *Lechner v. Frank*, even though the trial judge in that case incorrectly believed that the petitioner had been previously convicted for four other crimes. 341 F.3d at 639. In reality, the petitioner had been arrested

14

four times, but only convicted once. The court in *Lechner* found no due process violation because the trial judge did not reference the inaccurate information when he announced the sentence. *Id.* In Benford's trial, the judge acknowledged that he read the victim impact statements and referenced the petitioner's officially documented criminal history, but he did not mention the other murder alluded to in the statements. Rather than dwelling on the victims' statements, the judge focused on the nature of the crime itself, a gratuitous murder which arose out of a minor disagreement. He stated that the conduct of the murder informed him as to the character of the petitioner more than any other piece of evidence. The judge then proceeded to hand down a sentence below the statutory maximum. There is no indication that the trial judge gave explicit (if any) attention to the allegations of a second murder or that his sentencing decision was in any way founded on those allegations.

We find no indication that the admission and consideration of twelve victim impact statements, despite their dubious authorship and content, created a level of prejudice against the petitioner which resulted in "a complete miscarriage of justice." The petitioner's sixth claim is without merit.

### d. Claim Seven

Finally, Benford alleges that she was denied her right to due process because the Illinois Circuit Court erroneously ruled that her post-conviction claim of ineffective assistance of counsel was barred as *res judicata*. This Court may not consider Benford's claim for two reasons. First, the State correctly alleges that Benford procedurally defaulted on this claim by not bringing it before the Illinois Supreme Court in her post-conviction petition. We also cannot rule on this claim because the Illinois Appellate Court has already recognized that the circuit court's reliance on *res judicata* was improper. *People v. Benford*, No. 1-99-0845 (Ill. App. Ct. Feb. 2, 2001). After deciding this, the appellate court considered the merits of Benford's ineffective assistance of counsel claim and found it lacking. *Id.* Because the

Illinois Appellate Court has already overruled the circuit court in Benford's favor, we may not address the issue in the context of a habeas corpus petition.

## CONCLUSION

For the foregoing reasons, we deny Willette Benford's petition for writ of habeas corpus. It is so ordered.

_____
MARVIN E. ASPEN
United States District Judge

Dated 6/30/04

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Eastern Division

Willette Benford              **JUDGMENT IN A CIVIL CASE**

v.                                Case Number: 03 C 2643

Lynn Cahill-Masching

- ~~Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.~~

- ~~Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.~~

IT IS HEREBY ORDERED AND ADJUDGED that We deny Willette Benford's petition for a writ of habeas corpus.

Michael W. Dobbins, Clerk of Court

Date: 6/30/2004

Gladys Lugo, Deputy Clerk